**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Frontier Traylor Shea, LLC,

Plaintiff,

vs.

Metropolitan Airports Commission,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-CV-2196 ADM/FLN

---

Paul W. Killian, Esq., Sutherland, Asbill, & Brennan, LLP, Washington, D.C., and Robert J. Huber, Esq., Leonard, Street, & Deinard, Minneapolis, MN, appeared for and on behalf of the Plaintiff.

Jerome A. Miranowski, Esq. and James M. Jorissen, Esq., Oppenheimer, Wolff & Donnelly, LLP, Minneapolis, MN, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

The above-entitled matter came on for hearing before the undersigned United States District Judge on November 3, 2000, pursuant to Plaintiff's Motion for Permanent Injunction [Doc. No. 8]. The dispute arises from the failure of Defendant Metropolitan Airports Commission to award Plaintiff Frontier Traylor Shea, LLC a contract to construct a light rail transit tunnel and station. For the reasons set forth below, Frontier Traylor Shea, LLC's motion is denied.

## II. BACKGROUND

### A. Parties

Plaintiff in this action is Frontier Traylor Shea, LLC, a limited liability corporation ("Frontier LLC") created to submit a bid on the construction project at issue. The members of

FILED NOV 14 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD NOV 14 2000
DEPUTY CLERK

the LLC are Frontier-Kemper Constructors, Inc. ("Frontier"), Traylor Bros.. Inc. ("Traylor"), and J.F. Shea Construction ("Shea"). J. Stip. ¶ 2. Defendant is the Metropolitan Airports Commission ("MAC"), a public corporation organized under Minnesota law. *Id.* ¶ 1.

**B. Facts**

The Hiawatha Light Rail Transit Project is developing a transportation corridor from the Mall of America in Bloomington, Minnesota to downtown Minneapolis. Part of the plan requires construction under the runaway and through the Minneapolis/St. Paul International Airport terminal. As a result, the administrator of the airport, the MAC, the State of Minnesota, and the Metropolitan Council undertook the airport-related construction. These three groups entered into an agreement to serve as an outline of the rights and duties of the parties in respect to the project. J. Stip. Ex. B. The MAC was given the responsibility for finding a contractor for the job. *Id.* ¶ 2.1. Because of the magnitude and time-sensitivity of the undertaking, the MAC implemented a pre-qualifications process to ensure that each bidder had the 'experience and capabilities to complete the project prior to receiving the actual bids." J. Stip. Ex. A.

On February 23, 2000, the MAC sent out the "Request for Contractor's Pre-qualification Statement" to potential bidders. J. Stip. Ex. C. In response, Frontier, Traylor and Shea submitted a statement listing the entity's "exact name" as the "Frontier / Traylor / Shea joint venture" ("Frontier JV"). J. Stip. Under Seal ("J. Stip. US") Ex. 1 at 1. In this document, the Frontier JV indicated that it was a "joint-and-several joint partnership." *Id.* Ex. 1 at 3. In response to the inquiry whether it was a corporation, the JV responded that it was "[n]ot applicable." *Id.* In addition to Frontier JV, five other bidders proffered a pre-qualification statement to the MAC, all were joint ventures. *Id.* Ex. 2. On June 30, 2000, the MAC requested bids on the project from

entities that had pre-qualified. J. Stip. Ex. M. This document specified that only entities that pre-qualified with the MAC could tender a bid and enumerated those entities who were pre-qualified. *Id.* at 9-10, 14, 15, 19. "Frontier / Traylor / Shea, A Joint Venture" is listed as one of the entities. *Id.* Ex. M at 10.

On August 29, 2000, the MAC received a bid from Frontier LLC in the amount of $109,414,193. *Id.* Ex. N. It was the lowest bid received by the MAC, almost $500,000 less than the next lowest bid, tendered by the Obayashi Corp. / Johnson Brothers Corp., Joint Venture ("Obayashi"). *Id.* Ex. W, Ex. O. The MAC expressed concern that Frontier LLC was a limited liability company, as compared to the pre-qualified Frontier entity that identified itself as a joint venture partnership. The MAC sought legal advice on whether or not they could accept Frontier LLC's low bid. *Id.* Ex. U. The MAC's counsel advised on September 12, 2000, that the MAC's bidding specifications precluded an award to Frontier LLC as the low bidder because that entity was not pre-qualified. *Id.* Less than a week later, the MAC voted to reject Frontier LLC's bid on that basis and awarded the contract to Obayashi. *Id.* Ex. Y. Frontier LLC instituted this action soon thereafter.

## III. ANALYSIS

### A. Permanent Injunction Standard

Federal injunction procedures are laid out by Rule 65 of the Federal Rules of Civil Procedure. "In a preliminary injunction, a district court must balance four factors to determine whether injunctive relief is merited: 1) the threat of irreparable harm to the movant; 2) the balance between this harm and the harm to the nonmoving party should the injunction issue; 3) the likelihood of success on the merits; and 4) the public interest." *Randolph v. Rodgers*, 170

F.3d 850, 857 (8th Cir. 1999); (citing *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)). "The standard is the same for a permanent injunction except that the movant must show actual success on the merits." *Id.* (quoting *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). Because Frontier LLC is seeking a permanent injunction, they must show that they actually succeed on their claim to get the injunction; exhibiting a "likelihood of success on the merits" is not enough. *See id.*

**B. Analysis**

In pursuing its permanent injunction, Frontier LLC must prove that it will prevail on the merits of its legal claim. Frontier LLC's alleges MAC cannot deny them the award of the construction contract because they submitted the low bid and complied with the bidding requirements. It is clear that "bids for municipal contracts must substantially comply with all the requirements relative thereto, as contained in statutes, charter provisions, ordinances, and advertisements." *Bud Johnson Construction Co. v. Metropolitan Transit Commission*, 272 N.W.2d 31, 33 (Minn. 1971) (quoting *Nelson v. St. Paul*, 88 N.W.2d 853, 857 (Minn. 1958)). "The determination as to whether these requirements are satisfied and the awarding of the contract are administrative acts of discretion which will be enjoined only if done illegally, arbitrarily, capriciously, or unreasonably." *Id.* (citing *Nelson*, 88 N.W.2d at 858). Under Minnesota law, public contracts opened up for a bidding process must be awarded to the lowest responsible bidder that meets the bid specifications. *Foley Bros., Inc. v. Marshall*, 123 N.W.2d 387, 390 (Minn. 1963); *Sutton v. St. Paul*, 48 N.W.2d 436, 439 (Minn. 1951). "[O]fficials have some discretion in determining who is the lowest responsible bidder, but in exercising that discretion their judgment must be based upon some reasonable ground before a low bid can be

rejected." *Foley Bros.*, 123 N.W.2d at 390.

The MAC made a determination that the Frontier LLC bid did not comply with the specification and bid solicitation document requirement that all bidders be pre-qualified. The pre-qualified entry was listed as Frontier / Traylor / Shea Joint Venture. J. Stip. US Ex. 1 at 1, 3. Moreover, it further identified itself as a "joint-and-several joint partnership" and expressly disclaimed that it was a corporation. *Id.* Ex. 1 at 3. The MAC's listing of pre-qualifed bidders able to participate in the bidding identified the entry as the "Frontier / Traylor / Shea Joint Venture." Conversely, the Frontier / Traylor / Shea entity that entered the eventual bid expressly labeled itself a Limited Liability Corporation. *Id.* Ex. N.

Under Minnesota law, a joint venture is established "when two or more persons or entities combine their skill, time, property, and money in a business enterprise and agree to share the profits (and usually the losses) of the business." *Hansen International Sales Corp. v. KT's Kitchens, Inc.*, No. C5-96-2017, 1997 WL 147440, at *1 (Minn. Ct. App. 1997) (citing *Rehnberg v. Minnesota Homes, Inc.*, 52 N.W.2d 454, 456-57 (Minn. 1952); *accord Krengel v. Midwest Automatic Photo, Inc.*, 203 N.W.2d 841, 846-47 (Minn. 1973). "The effect of a joint venture is to make individual defendants jointly liable due to their mutual undertaking." *Hansen*, 1997 WL 147440 at *1 (citing *Curry v. McIntosh*, 389 N.W.2d 224, 28 (Minn. Ct. App. 1986)). Although, the determination of whether an entity is a joint venture in "[e]ach case depends on its particular facts," four elements must exist: "(1) contribution, (2) joint proprietorship and mutual control, (3) sharing of profits, and (4) an express or implied contract." *Id.* (citing *Rehnberg*, 52 N.W.2d at 457); *accord Krengel*, 203 N.W.2d at 847.

Frontier LLC claims that a limited liability corporation is a joint venture. It claims that it

meets the four required elements. The Minnesota Department of Administration defines a "joint venture" as simply "the temporary association of two or more businesses to secure and fulfill a procurement bid award." Minn. R. 1230.0150(11). Frontier LLC argues that it meets this definition. The treatise, *Partnership & Joint Venture Agreements,* states that "[j]oint ventures ordinarily take one of four basic forms: the corporate joint venture, the partnership joint venture, the limited liability company joint venture and the contractual joint venture." Richard D. Harroch, *Partnership & Joint Venture Agreements*, § 7.02(1) (2000). Frontier LLC cites to other courts that have referred to a limited liability company as a joint venture. *Cablevision of Boston, Inc. v. Public Improvement Commission*, 38 F.Supp.2d 46, 51 (D.Mass. 1999) (referring to a limited liability company as a "joint venture" throughout the opinion), *aff'd* 184 F.3d 88 (1st Cir. 1999); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 288 (Del. 1999) (the parties in the case "agreed to undertake a joint venture that was to be carried out using a limited liability company as the vehicle"). However, none of these cases construe Minnesota law or specifically analyze whether a limited liability corporation was a joint venture.

The MAC counters that a joint venture is like a partnership and cannot take the form of a limited liability company. The Eighth Circuit has commented that a "joint venture is a species of partnership." *Ringier America, Inc. v. Land O'Lakes, Inc.*, 106 F.3d 825, 828 (8th Cir. 1997). The court continued, commenting that "[u]nder Minnesota law, 'the rules and principles applicable to a partnership relation, with few if any material exceptions, govern and control the rights, duties, and obligations of the parties to a joint venture.'" *Id.* (citing *Rehnberg*, 52 N.W.2d at 457). Each entity making up the joint venture is individually jointly liable for the joint venture. *Hansen*, 1997 WL 147440 at *1 (citing *Curry v. McIntosh*, 389 N.W.2d 224, 28 (Minn.

Ct. App. 1986)). The entity that pre-qualified, Frontier JV, identified itself as a joint venture partnership and the MAC avers that as such, each of the three entities in the joint venture would be individually liable for all the debts of the undertaking.

The MAC claims that Frontier LLC, which entered the low bid, has altered the structure of holding each member jointly liable for all the undertakings by its organization as a limited liability company. Frontier LLC was organized in Delaware, where the law states that the "debts, obligations and liabilities of a limited liability company . . . shall be solely the debts, obligations of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." Del. Code Ann. tit. 6 § 18-303(a). The law also states that the members can "agree to be personally liable for any or all debts, obligations and liabilities of the limited liability company" if they wish. *Id.* at § 18-303(b).

Because Frontier LLC had not pre-qualified, it had not shown the MAC in its pre-qualification any agreement making each member jointly liable for all of the entity's obligations and liabilities. As a result, the MAC reasoned that the entity's bid on the contract is a material variance from the entity that pre-qualified because of the change from the joint venture partnership that applied for pre-qualification to the limited liability corporation that submitted the bid. As a result, the MAC, on advice of counsel, rejected the Frontier LLC bid because Frontier LLC had not pre-qualified, as was clearly required under the bid process' rules and specifications. J. Stip. Ex. M at 9-10, 14, 15, 19.

The MAC's decision to refuse the Frontier LLC bid is given a level of discretion under

Minnesota law. *Bud Johnson Construction Co. v. Metropolitan Transit Commission*, 272 N.W.2d 31, 33 (Minn. 1971) (quoting *Nelson v. St. Paul*, 88 N.W.2d 853, 857 (Minn. 1958)). Because the MAC's decision was based upon whether or not the requirements for bidding were fulfilled, this court must grant the MAC some latitude in respect to its decision and can only enjoin that determination if it is done "illegally, arbitrarily, capriciously, or unreasonably" *Id.* (citing *Nelson*, 88 N.W.2d at 858).

Given the lack of clarity in the status of when a limited liability corporation is legally a joint venture and the conflicting documents presented to the MAC by Frontier JV and Frontier LLC, the decision that the Frontier LLC was not the same entity that pre-qualified cannot be said to be illegal, arbitrary, capricious or unreasonable. The specifications clearly state that all bidders must be pre-qualified to successfully bid on the project. Considering the magnitude and risk inherent in this project, it is certainly reasonable to require exacting compliance with bidding specifications to assure the public full protection. Distinctions over corporate form and their ramifications on issues of liability are of legitimate and serious concern given the project at issue.

Furthermore, there is no evidence that the MAC's decision was motivated by any other consideration than a good faith belief that Frontier LLC's bid did not comply with the established process. MAC's decision to not award the contract to Frontier LLC cannot be enjoined. Because the Supreme Court requires that a movant "must show actual success on the merits" to receive a permanent injunction, *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987), Frontier LLC's failure to do so is dispositive of its motion. As a result, there is no need to discuss the other factors analyzing whether or not injunctive relief is merited. Frontier LLC's Motion for Permanent Injunction is denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Permanent Injunction [Doc. No. 8] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: November 14, 2000

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEALNO.CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd